ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| JUAN HOWE HERNÁNDEZ y/o CLARYSSA CORREA MÁRQUEZ  Recurrido  v.  CONSEJO DE TITULARES DEL CONDOMINIO TORRE SAN MIGUEL; JUNTA DE DIRECTORES CONDOMINIO TORRE SAN MIGUEL  Recurrente | **KLRA202500080** | *REVISIÓN ADMINISTRATIVA* procedente de San Juan  Caso Núm.: C-SAN-2022-0011673  Sobre: Ley de Condominios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### **SENTENCIA**

En San Juan, Puerto Rico, a 5 de mayo de 2025.

Comparece ante este foro el Consejo de Titulares y la Junta de Directores del Condominio Torre San Miguel (Junta de Directores o "parte recurrente") y nos solicitan que revisemos una *Resolución Sumaria* emitida por el Departamento de Asuntos del Consumidor (DACo), notificada el 2 de octubre de 2024. Mediante el referido dictamen, el DACo declaró parcialmente *Ha Lugar* la *Querella* instada por el Sr. Juan Howe Hernández y la Sra. Claryssa Correa Márquez ("los recurridos"). En consecuencia, ordenó a la Junta de Directores a entregar ciertos documentos, y a pagar $1,000.00 en concepto de honorarios de abogado.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** el dictamen recurrido.

**I.**

El 14 de julio de 2022, los recurridos presentaron una *Querella* ante el DACo en contra de la parte recurrente.[1] El 29 de julio de 2022, el DACo notificó la Querella, a la cual le fue asignado el número C-SAN-2022-0011673.[2] En específico, los recurridos alegaron lo siguiente:

> Desde el 4 de marzo de 2022 estamos esperando que la Junta de Directores del Condominio Torre de San Miguel nos haga entrega de las copias de los documentos solicitados el 25 de febrero de 2022, según la Orden 2022-001, firmada por el Secretario del Departamento de Asuntos del Consumidor de PR (DACo, en adelante), el Lcdo. Edan Rivera Rodríguez.

Por ello, solicitaron que el DACo procediera a cumplir con la Regla 29 del Reglamento de Condominios, Reglamento Núm. 9386 del 6 de junio de 2022, para que, en el término de 14 días, la Junta de Directores entregara las copias de la documentación solicitada.

Posteriormente, el 11 de agosto de 2022, la Junta de Directores presentó su *Contestación a Querella*.[3] En esencia, negaron las alegaciones imputadas.

El 9 de febrero de 2023, la parte recurrente presentó una *Moción en Solicitud de Resolución Sumaria por Abuso del Derecho Propietario*.[4] Mediante la cual, alegó que la solicitud de los recurridos era abusiva y contraria a derecho, debido a que su propósito era causar molestias o hacer una expedición de pesca. Por ello, sostuvo que no existían hechos materiales en controversia para que se dictara una resolución sumaria.

---

[1] *Querella*, anejo VII, págs. 70-90 del apéndice del recurso.
[2] *Notificación de Querella*, anejo VII, pág. 69 del apéndice del recurso.
[3] *Contestación a Querella*, anejo VI, págs. 65-68 del apéndice del recurso.
[4] *Moción en Solicitud de Resolución Sumaria por Abuso del Derecho Propietario*, anejo V, págs. 59-64 del apéndice del recurso.

Reiteró, que el reclamo de los recurridos excedía los límites del derecho que les asiste a obtener la documentación, amparándose en el abuso del derecho propietario. Finalmente, solicitó que le fuera impuesta una sanción de honorarios de abogado por temeridad a los recurridos.

En respuesta, el 22 de febrero de 2023, los recurridos presentaron una *Réplica a "Moción en Solicitud de Resolución Sumaria por Abuso de Derecho Propietario."*[5] En esta, sostuvieron que tenían un interés propietario por descubrir la documentación pertinente de los documentos relacionados a la administración y finanzas del régimen de propiedad horizontal. Asimismo, arguyeron que la parte recurrente es quien no ha actuado de buena fe ni con manos limpias, dado que se niegan a entregar la evidencia solicitada, faltando al deber de diligencia.

Luego de varias incidencias procesales, el 1 de octubre de 2024, el DACo emitió una *Resolución Sumaria*.[6] Como parte de dicha resolución, consignó tres (3) determinaciones de hechos. En la primera determinación de hechos, desglosó todos los documentos que entendió la controversia del caso estuvo trabada. En esencia, indicó que los documentos relacionados eran:

> (I) Administración,
> (II) Estados de Cuentas de Bancos,
> (III) Contratos, Reportes, Certificaciones, Daños, Ingenieros Estructurales,
> (IV) Seguros del Condominio Torre San Miguel,
> (V) Antenas de Telecomunicaciones e Internet,
> (VI) Bonos de Navidad,
> (VII) Seguridad,
> (VIII) Transiciones de Juntas de Directores (2015 al Presente),
> (IX) Contratos del Nuevo Generador Eléctrico,

---

[5] *Réplica a "Moción en Solicitud de Resolución Sumaria por Abuso de Derecho Propietario"*, anejo IV, págs. 53-58 del apéndice del recurso.
[6] *Resolución Sumaria*, anejo III, págs. 21-52 del apéndice del recurso.

(X) Estación de Autos Eléctricos,
(XI) Caso: Corte de Árbol,
(XII) Certificación que el Sr. Carlos S. Figueroa, Ex Presidente y actual colaborador de la Junta de Directores, está autorizado a tener tres estacionamientos,
(XIII) Certificación de Documento Legal,
(XIV) Proyecto de Remodelación de Oficina y Caseta de Seguridad,
(XV) Compensaciones y Beneficios,
(XVI) Cambios en la Escritura Matriz,
(XVII) Remodelaciones en el gimnasio,
(XVIII) Gastos de Reparaciones y Préstamos Solicitados, 2019
(XIX) Reemplazo de Cámaras de Seguridad,
(XX) Número de Querella,
(XXI) Horas de Trabajo Extendidas de la Administradora,
(XXII) Otros Contratos,
(XXIII) Enmiendas (2022) al Nuevo Reglamento del Condominio Torre San Miguel (2021),
(XXIV) Multas,
(XXV) Reglamento Asambleas Virtuales,
(XXVI) Provea Evidencia de Multas durante el Año 2021-22,
(XXVII) Facturas por Servicios Profesionales,
(XXVIII) Compra de Lámpara,
(XXIX) Pagos por Aumento de Luz.

2. Lo anterior recoge íntegramente los documentos solicitados.

3. Que de la adjudicación surge que hubo una gran cantidad de documentos que de su faz eran divulgables a favor de la parte querellante. Encontramos en temeridad a la parte querellada.

El DACo determinó que no había controversia esencial sobre ningún hecho material, por lo que, procedía emitir una resolución sumaria. Así pues, declaró *Ha Lugar* parcialmente la querella, y ordenó la divulgación de la mayoría de los documentos solicitados, excepto de aquellos que no fueron fundamentados en su requerimiento. Señaló, que utilizaron el criterio dispuesto en el Artículo 55 de la Ley de Condominios de Puerto Rico, el cual les permitía concluir que la extensión de la divulgación de los documentos abarca a los que estén en los archivos del condominio.

Finalmente, el DACo concluyó que "la parte recurrente asumió una conducta de continuar el caso bajo la teoría que no tenía responsabilidad de divulgar la totalidad de lo requerido por la parte querellante."

Como consecuencia, concluyó que la Junta de Directores actuó con temeridad, obstinación y contumacia al no atender la reclamación de los recurridos obligándolos a continuar en un litigio innecesario. Por lo tanto, los condenó a pagar $1,000.00 en concepto de honorarios de abogado.

En desacuerdo, el 21 de octubre de 2024, la Junta de Directores presentó una *Moción en Solicitud de Reconsideración*.[7] En esencia, alegó que la determinación del DACo resultaba en un abuso del derecho propietario. Asimismo, sostuvo que los recurridos debían justificar la razón para solicitar dicha cantidad de documentos. Además, que toda acción que pudieron tener los titulares en su contra prescribió por el paso de dos (2) años. Finalmente, sobre la imposición de los honorarios de abogados, esbozó que no procedían, debido a que los recurridos no prevalecieron en el pleito.

Ese mismo día, el DACo acogió dicha moción, por medio de un correo electrónico en el que indicó lo siguiente: "[l]a moción presentada estará siendo evaluada por el personal designado por DACO próximamente."[8]

No obstante, transcurrido el término establecido para que el DACo emitiera alguna determinación, el 6 de febrero de 2025, la Junta de Directores presentó el recurso de epígrafe, mediante el cual formuló los siguientes señalamientos de error:

> Erró el Honorable Departamento de Asuntos del Consumidor (DACo) al no aplicar la doctrina del abuso del derecho propietario y no desestimar la querella en la que se reclama a la Junta de Directores del

---

[7] *Moción en Solicitud de Reconsideración*, anejo II, págs. 11-19 del apéndice del recurso.
[8] Véase, correo electrónico sobre *Notificación de presentación de moción*, pág. 20 del apéndice del recurso.

Condominio Torre San Miguel la entrega de decenas y decenas de documentos.

Erró el Honorable Departamento de Asuntos del Consumidor (DACo) al conceder $1,000 dólares de honorarios de abogado a la parte Recurrida aun cuando esta parte no prevaleció en todos sus reclamos.

El 28 de marzo de 2025, los recurridos presentaron su alegato en oposición al recurso.

Con el beneficio de ambos escritos y el expediente de revisión, procedemos a resolver.

**II.**

**-A-**

El Artículo 4.002 de la Ley Núm. 201-2003, *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, según enmendada, dispone que el Tribunal de Apelaciones revisará, como cuestión de derecho, las decisiones finales de los organismos y agencias administrativas que hayan sido tramitadas conforme con las disposiciones de la Ley Núm. 37-2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), 4 LPRA sec. 24 (u). En consonancia, la Regla 56 de nuestro Reglamento, provee para que este foro intermedio revise las decisiones, los reglamentos, las órdenes y las resoluciones finales dictadas por organismos o agencias administrativas. Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.56.

Es un principio reiterado que las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008); *Matos v. Junta Examinadora*, 165 DPR 741, 754 (2005). Lo

anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere. *Assoc. Ins. Agencies, Inc. v. Com. de Seguros*, 144 DPR 425, 436 (1997); *Misión Ind. PR v. JP y AAA*, 142 DPR 656, 672-673 (1997). En virtud de lo cual, el ejercicio de revisión judicial debe deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. de Corrección y Rehabilitación,* 208 DPR 656, 674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

En este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. ARPe,* 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020*); Misión Ind. PR v. JP*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

En lo concerniente al alcance de la revisión judicial, la Sección 4.5 de la de LPAU, 3 LPRA sec. 9675, según enmendada, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. Como consecuencia, la

revisión judicial de los tribunales para determinar si un hecho se considera probado o no queda limitada conforme a la siguiente norma:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Íd*.

Nuestro Tribunal Supremo ha definido el concepto de "evidencia sustancial" como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. PR v. JP,* supra, pág. 131. Además, ese alto foro ha reiterado que:

> Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397-398 (1999); *Metropolitana SE v. ARPe,* 138 DPR 200, 213 (1995); *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953).

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador de forma que este no pueda concluir que la decisión de la agencia fue justa porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de

revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor." *Domínguez v. Caguas Expressway Motors, Inc.,* supra, pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

–B–

El Departamento de Asuntos del Consumidor (DACo) constituye el organismo administrativo cuyo principal propósito es defender, vindicar e implantar los derechos de las personas consumidoras en nuestra jurisdicción, mediante la aplicación de las leyes que asistan sus reclamos. Art. 3 de la *Ley Orgánica del Departamento de Asuntos del Consumidor*, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341b; *Polanco v. Cacique Motors*, 165 DPR 156 (2005). A tenor con ello, la agencia está plenamente facultada para resolver las quejas y querellas promovidas por las personas ciudadanas en ocasión a que se transgredan las disposiciones legales que proveen para la protección de sus prerrogativas; ello, en cuanto a servicios adquiridos o recibidos del sector privado de la economía. A su vez, el DACo está facultado para conceder los remedios pertinentes mediante la debida adjudicación administrativa. 3 LPRA secs. 341h, 341i-1.

En virtud de lo anterior, mediante la aprobación del *Reglamento de Procedimientos Adjudicativos del DACo*, Reglamento Núm. 8034 de 14 de junio de 2011 (Reglamento Núm. 8034), el organismo adoptó un esquema uniforme de reglas para la dilucidación de las controversias sometidas a su consideración. De este modo, la agencia ve regido el ejercicio de sus poderes respecto al proceso adjudicativo del que trate, por la aplicación de normas

afines a la solución justa, rápida y económica de las querellas. Regla 1 del Reglamento Núm. 8034, *supra*. Las reglas contenidas en el referido precepto aplicarán a las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores o por el DACo. Regla 3 del Reglamento Núm. 8034, *supra*. Toda resolución emitida por esta agencia otorgará el remedio que en derecho proceda, aun cuando la parte querellante no lo haya solicitado. Regla 27.1 del Reglamento Núm. 8034, *supra*. Ahora bien, en la ejecución de sus facultades adjudicativas, la Regla 24 del Reglamento Núm. 8034, *supra*, expresamente adopta el principio administrativo sobre la aplicación subsidiaria de las reglas procesales y probatorias propias de los trámites judiciales, al disponer como sigue:

> Las Reglas de Procedimiento Civil y de Evidencia no serán de estricta aplicación a las vistas administrativas, sino en la medida en que el Funcionario o Panel de Jueces que presida la vista o el Departamento estime necesario para llevar a cabo a los fines de la justicia.

De otra parte, el Reglamento en su Regla 11, inciso 11.1 dispone:

> El [DACO] ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

Además, la Sección 2157(b) de la Ley de Procedimiento Administrativo Uniforme (LPAU) también contempla la solución sumaria sin necesidad de celebrar una vista adjudicativa. 3 LPRA sec. 2157(b); 3 LPRA sec. 2101 *et seq*. A tales efectos dispone:

[…]

(b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sea separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.

La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que:

(1) Existen hechos materiales o esenciales controvertidos;

(2) hay alegaciones afirmativas en la querella que no han sido refutadas;

(3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial, o

(4) como cuestión de derechos no procede.

**-C-**

La Ley Núm. 129-2020, 31 LPRA sec. 1921 *et seq.*, mejor conocida como la *Ley de Condominios de Puerto Rico*, se aprobó con el propósito principal de viabilizar la propiedad que forma parte de un inmueble sometido al Régimen de Propiedad Horizontal. 31 LPRA sec. 1921a. Dicho estatuto define el concepto de Consejo de Titulares como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares". 31 LPRA sec. 1921b. Sus resoluciones y acuerdos serán de ineludible cumplimiento por todas las personas que se relacionen con el condominio, siempre y cuando hayan sido adoptados en asambleas debidamente convocadas y constituidas. 31 LPRA sec. 1922t.

Asimismo, la Ley de Condominios, 31 LPRA sec. 1291 *et seq.*, se aprobó para hacer posible el disfrute de la propiedad individual sobre un apartamiento y las áreas comunes que forman parte de un inmueble sometido al régimen de propiedad horizontal siempre que no se menoscabe el derecho al disfrute de las propiedades de los demás titulares. El Consejo de Titulares, esto es el conjunto de la totalidad de los titulares, estará representado por la Junta de Directores, la cual a su vez goza de los siguientes deberes y facultades:

El Director o la Junta de Directores constituye el órgano ejecutivo de la comunidad de titulares y tendrá los siguientes deberes y facultades:

(a) Atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares.

(b) Preparar con la debida antelación y someter al Consejo de Titulares el presupuesto anual. El Director o la Junta de Directores será responsable de hacer que se notifique una copia del presupuesto anual a todo titular, con al menos quince (15) días de antelación, a la fecha en que se celebre la asamblea donde se someta el mismo a la aprobación del Consejo de Titulares.

(c) Dirigir los asuntos financieros concernientes a las recaudaciones y pagos y anotar detalladamente en un libro los activos y obligaciones, así como también, las partidas de ingresos y gastos que afecten al inmueble y a su administración, fijándoles por orden de fecha y especificando los gastos de conservación y reparación de los elementos comunes y tener disponibles para su examen por todos los titulares en días y horas hábiles que se fijarán para general conocimiento tanto del libro expresado como los comprobantes acreditativos de las partidas anotadas.

(d) Cobrar a los titulares las cantidades con que deben contribuir a los gastos comunes y realizar los demás cobros y pagos

que sean necesarios, extendiendo los correspondientes recibos y cheques.

(e) Abrir las cuentas bancarias necesarias a nombre del Consejo de Titulares, en las cuales depositará todos los ingresos del régimen, realizando los depósitos dentro del término de su recibo que fije el reglamento; girar cheques contra dicha cuenta para realizar todos los pagos que sean necesarios, cuidando de no extenderlos al portador y que cada uno tenga su comprobante o recibo correspondiente.

(f) Someter para la aprobación del Consejo de Titulares los estados financieros correspondientes al último año fiscal o a todo aquel año que no se hubiere aprobado previamente. Los estados financieros deberán incluir un estado de ingresos y gastos de todos los fondos existentes, indicando la cantidad total facturada y/o recibida por concepto de cuotas para gastos comunes y por otros conceptos, los gastos detallados de acuerdo a las partidas incluidas en el presupuesto anual aprobado, incluyendo los pagos realizados al Agente Administrador, si aplica. Además, deberá incluir un estado de situación financiera, indicando los balances de efectivo de cada fondo. Deberá incluir, además, las cuentas a cobrar por concepto de gastos comunes y por otros conceptos, otros activos, las obligaciones incurridas y no pagadas al cierre del periodo y el balance o déficit acumulado a la fecha del cierre del periodo informado en cada fondo existente. El Director o la Junta de Directores será responsable de hacer que se notifique una copia de los estados financieros a todo titular, con al menos quince (15) días de antelación, a la fecha en que se celebre la asamblea donde se someta para la aprobación dichos estados financieros.

(g) Atender a la conservación del inmueble y disponer las reparaciones ordinarias, conforme dispone el presupuesto anual aprobado por el Consejo de Titulares y en cuanto a las extraordinarias, adoptar las medidas necesarias previa aprobación del Consejo de Titulares.

(h) Mantener el registro de titulares. El registro de titulares podrá llevarse y conservarse en cualquier forma y manera que permita acceder los datos que allí se consignan, conforme los establezca la Junta de Directores, ya sea en papel, o formatos electrónicos, digitales o conforme lo requiera algún programa o aplicación que se utilice para el almacenaje de dichos datos.

(i) Cumplir y hacer cumplir las disposiciones de esta Ley, del reglamento y de la escritura matriz y de los acuerdos del Consejo de Titulares.

(j) Cubrir cualquier vacante de los miembros de la Junta de Directores sujeto a revocación del Consejo de Titulares.

(k) Relevar de sus funciones al Agente Administrador por justa causa. Se entenderá por justa causa, el desempeño negligente o culposo de sus funciones, la deshonestidad o la violación de las normas de buena conducta establecidas en el reglamento del condominio o el incumplimiento de sus deberes establecidos contractualmente. El Director o la Junta de Directores deberá convocar al Consejo de Titulares no más tarde de treinta (30) días del relevo para informar de dicha acción, a fin de que éste actúe según estime conveniente.

(l) Establecer un plan de pago para aquellos titulares que demuestren no tener la capacidad económica para cumplir con los plazos de cuotas, cuotas especiales, derramas, y/o multas con pago vencido de sesenta (60) días o más.

(m) Establecer los controles y procedimientos adecuados para salvaguardar los activos del Consejo de Titulares y cumplir con todas las obligaciones y regulaciones requeridas.

(n) Todas las demás que le sean asignadas por el reglamento o por el Consejo de Titulares.

(o) Custodiar y proteger los documentos constitutivos del Régimen de Propiedad Horizontal tales como planos, escritura matriz, convocatorias, actas de asambleas, o cualquier otro documento análogo que deba conservarse permanentemente. 31 LPRA sec. 1922y.

A su vez, el Artículo 62 de la Ley de Condominios establece:

Con el voto de la mayoría, el Consejo de Titulares podrá asegurar contra riesgos el inmueble para cubrir las áreas comunes generales, procomunales y limitadas de este, así como otros riesgos no relacionados a la propiedad privada de los titulares, para beneficio común de los titulares. Cuando se requiera por reglamentación federal y/o estatal, o por el voto de dos terceras (2/3) partes de todos los titulares que a su vez reúnan dos

terceras (2/3) partes de participación en los elementos comunes, el Consejo de Titulares podrá adquirir pólizas para asegurar las áreas comunes generales, procomunales y limitadas de este, incluyendo los bienes privativos incorporados originalmente al edificio. Adquirido así este tipo de póliza, todos los titulares quedarán vinculados a sufragar la misma, incluidos los que se hubiesen opuesto.

El tipo de póliza que decida adquirir el Consejo de Titulares, no afectará ni restringirá de forma alguna el derecho de los titulares de asegurar por su cuenta, y para beneficio propio, su propiedad privada y elementos privativos de su apartamento.

[…]

Todo titular podrá solicitar a la Junta de Directores la inspección de los documentos relacionados con los seguros comunales. 31 LPRA sec. 1293g.

Por otro lado, como parte de la administración del inmueble, la ley exige que se efectúe un Registro de Titulares, el cual incluirá la siguiente información, a saber: (1) nombre del titular, (2) su firma, (3) su número de teléfono, (4) su dirección de correo electrónico, postal y residencial, (5) transferencias sucesivas, (6) arrendamientos, y (7) copia de la escritura de compraventa que acredite la titularidad de cada condómino. 31 LPRA sec. 1922d. El Artículo 37 de la Ley de Condominios, 31 LPRA sec. 1922i, establece que "[l]a información recopilada en el Registro de Titulares se mantendrá protegida para usos estrictamente administrativos". No obstante, lo anterior, el precitado artículo aclara que:

Los titulares tendrán al menos acceso al nombre, dirección de correo electrónico y dirección postal de quienes comprenden la comunidad de titulares para fines de convocar al Consejo de Titulares. Los titulares podrán autorizar a la Junta de Directores a ofrecer mayor información para los efectos de convocatoria por parte de un titular. *Íd*.

Por su parte, el Artículo 55 de la Ley Núm. 129-2020, 31 LPRA sec. 1923, establece que, como parte de los poderes y deberes del Secretario de la Junta de Directores, este:

[…]

f) Custodiará y hará disponible para la revisión de los titulares que así lo soliciten, todo documento perteneciente al Consejo que obre en los archivos del condominio, tales como, pero sin limitarse a, documentos relacionados a la actividad fiscal del condominio, las actas de las asambleas del Consejo de Titulares, las actas de las reuniones de la Junta de Directores, y los contratos adjudicados. No se hará disponible para la revisión de un titular la información personal de los demás titulares, a menos que otro Artículo de esta Ley así lo permita, o que el titular haya previamente autorizado la divulgación de dicha información.

**-D-**

De conformidad con la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, procederá la imposición de honorarios de abogados cuando una parte haya actuado con temeridad o frivolidad. La conducta que amerita la imposición de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar, o que ocasione gestiones evitables. El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a innecesariamente asumir las molestias, gastos, trabajos e inconvenientes de un pleito. Una vez determinada la existencia de temeridad, la imposición del pago de honorarios de abogado es mandatoria. *Andamios de PR Inc. v. JPH Contractors Corp.*, 179 DPR 503, 519-520 (2010).

Al fijar la cuantía de los honorarios hay que considerar los siguientes factores: (1) la naturaleza del litigio, (2) las cuestiones de derecho envueltas, (3) las cuantías en controversia, (4) el tiempo invertido, (5) los esfuerzos y la actividad profesional que haya tenido que desplegarse, y (6) la habilidad y reputación de los abogados envueltos. El cálculo no tiene que ser el equivalente al valor real de los servicios prestados o pagados, sino con aquella suma que en consideración al grado de temeridad y demás circunstancias, el tribunal concluye que representa razonablemente el valor de esos servicios. Como se trata de una determinación discrecional, solo se alterará si se demuestra que la cuantía es excesiva o exigua, o que medió abuso de discreción. *Andamios de PR Inc. v. JPH Contractors Corp.*, supra, págs. 519-520; *Corpak v. Ramallo Brothers*, 125 DPR 724, 740-741 (1990).

### III.

En el caso de autos, la Junta de Directores solicita que revoquemos la *Resolución Sumaria* emitida por el DACo, en la cual le ordenó a suplir ciertos documentos solicitados por los recurridos y le ordenó a pagar $1,000.00 en concepto de honorarios de abogado. En esencia, en su primer señalamiento de error, la Junta de Directores alega que erró el DACo al no aplicar la doctrina del abuso del derecho propietario y no desestimar la querella. Sostiene que, el DACo debió exigir como requisito antes de conceder el remedio, que los recurridos justificaran la razón para obtenerlos. Mientras que, en su segundo señalamiento de error plantea que incidió el DACo al concederles $1,000.00 de

honorarios de abogado a los recurridos cuando no prevalecieron en el reclamo.

Por su parte, los recurridos arguyen que conforme establece la Ley de Condominios, ellos tienen derecho a solicitar información respecto a la administración y manejo de fondos del condominio. Asimismo, indican que la Junta de Directores no logró identificar qué información solicitada constituía un abuso del derecho. En cuanto a los honorarios de abogados, alegan que no son análogos a los honorarios por temeridad designados en la Regla 44.1 de Procedimiento Civil, sino mas bien conforme a la Regla 34.3 de Procedimiento Civil.

Según surge del derecho antes expuesto, el Artículo 55 de la Ley Núm. 129-2020, *supra*, establece que se hará disponible para revisión de los titulares todo documento perteneciente al Consejo que obre en los archivos del condominio, entre ellos, documentos relacionados a la actividad fiscal del condominio, las actas de las asambleas del Consejo de Titulares, las actas de las reuniones de la Junta de Directores, y los contratos adjudicados. Añade que, no se divulgará la información personal de otros titulares, a menos que otro Artículo de la Ley así lo permita, o que el titular haya previamente autorizado la divulgación de dicha información.

Luego de evaluar la totalidad del expediente, concluimos que la determinación del DACo fue correcta. La decisión del DACo encuentra apoyo en el inciso 11.1 del Reglamento el cual permite la solución de las controversias de manera sumaria sin la necesidad de celebrar una vista administrativa, si luego de las partes haber hecho sus planteamientos y de haberse

evaluado la evidencia, no surge una controversia real de hechos. El proceso administrativo se creó ante la necesidad de establecer un proceso ágil, flexible y menos costoso para atender las controversias aplicando la pericia que ostente la agencia.

Es por ello, que disponemos que la Junta de Directores no aportó evidencia suficiente para derrotar la presunción de corrección que caracteriza la decisión del DACo. Los recurridos, conforme dispone la Ley, tienen derecho a revisar y obtener información sobre los actos de administración de la Junta de Directores, por lo que, la *Resolución Sumaria* emitida por el DACo atiende adecuadamente la petición.

Por último, el DACo hizo una determinación por temeridad respecto a la actuación de la Junta de Directores por la cantidad de $1,000.00, correspondientes a los honorarios de abogado. Expresamente indicó que la Junta de Titulares "asumió una conducta de continuar el caso bajo la teoría que no tenía responsabilidad de divulgar la totalidad de lo requerido por la parte querellante". Como consecuencia, entendió probado el elemento de frivolidad y los condenó al pago de $1,000.00. A tenor con la Regla 27.3 del DACo, procedía la imposición de honorarios.

Es importante enfatizar que, al desempeñar nuestra función revisora, estamos obligados a considerar la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Por consiguiente, consideramos que el DACo no actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. La totalidad

de la evidencia que obra en el récord nos obliga a confirmar el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Resolución Sumaria* recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones